IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 7:21-CV-14-RJ

| | |
|---|---|
| TIFFANY DUNCAN,<br><br>　　　　　　Plaintiff/Claimant,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | O R D E R |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, -23] pursuant to Fed. R. Civ. P. 12(c). Claimant Tiffany Duncan ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB on August 13, 2018, and for SSI on October 1, 2018, alleging disability beginning May 1, 2018. (R. 10, 242–51). Both claims were denied initially and upon reconsideration. (R. 10, 68–153). A hearing before the Administrative Law Judge ("ALJ") was held on August 20, 2020, at which Claimant,

represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 10, 34–67). On September 10, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 7–28). On December 2, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

2

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ assigned Claimant an RFC that was not supported by substantial evidence, and (2) the ALJ relied upon VE testimony that was facially untenable. Pl.'s Mem. [DE-20] at 5–7.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since May 1, 2018, the alleged onset date. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: low back/SI joint dysfunction; morbid obesity; diabetes mellitus; diabetic retinopathy; bilateral carpal tunnel syndrome/osteoarthritis/trigger finger; hypertension; migraines; asthma; lipomas; major depressive disorder; and generalized anxiety disorder. (R. 12–13). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13–17). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a mild limitation in interacting with others; and a moderate limitation in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] requiring the following limitations:

> [F]requent reaching in all directions, handling, fingering, feeling, pushing, pulling, and/or operating hand controls with the upper extremities; occasional pushing, pulling, and/or operating foot controls with the lower extremities; occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and/or crawling; avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

and the like; avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; the claimant can understand and perform simple, routine, repetitive, and maintain concentration, persistence, and pace to stay on task for 2 hour periods over the course of a typical 8-hour day with normal breaks in order to perform such tasks, in a low stress setting, further defined to mean no production- pace or quota-based work; rather, she requires a goal-oriented job.

(R. 17–20). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely persuasive of disability based upon the medical and other evidence. (R. 18). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as an assistant manager. (R. 20–21). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21–22).

## V. DISCUSSION

### A. The ALJ's RFC Determination

Claimant generally contends that the ALJ erred because the RFC determination was not supported by substantial evidence. Pl.'s Mem. [DE-20] at 5–6. Claimant appears to suggest that the ALJ's decision is inconsistent with the Claimant's subjective statements, with third party reports, and with the objective medical evidence. Defendant contends that the ALJ reasonably found Claimant could perform work at the sedentary exertional level with limitations. Def.'s Mem. [DE-24] at 6–9.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-

5

related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process."

6

*Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The ALJ recounted Claimant's hearing testimony as follows:

The claimant alleges she is unable to work due to diabetes. Her diabetes management changes from day to day and is responsible for some of her other conditions, including headaches and neuropathy. The Claimant indicates she has to check her blood pressure 6 to 10 times a day. She reports numbness and swelling of the feet and hands, reduced visual acuity with floaters, and headaches 4 to 5 times a week. The claimant further alleges back problems make it difficult for her to bend at the waist, and she reports she has to use an assistive device for ambulation.

7

She also alleges depression and anxiety. She testified she has a service dog.

(R. 18). The ALJ stated that the Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not persuasive of disability based upon the medical and other evidence in the record . . . ." (R. 18).

Regarding the several reports of Claimant's friends and family, the ALJ stated that,

> Although they are not considered opinion under the current rules, the undersigned considered the third-party statements submitted on behalf of the claimant by Celia Neumeyer (Exhibit 26E), Joseph Booth (Exhibit 27E), Vicki Mcdounough (Exhibit 28E), and Melina Wichmann (Exhibit 29E). These statements were based on direct observation of/interaction with the claimant. However, these witnesses is [sic] inherently biased due to the personal nature of their relationships with the claimant. In addition, the witnesses are not acceptable medical sources in accordance with the regulations. The undersigned finds the substantive medical evidence of record more probative of the claimant's residual functional capacity, as discussed herein.

(R. 20). Celia Neumeyer reported that she had been taking care of Claimant for about two years and watched Claimant's health decline. (R. 374). Neumeyer stated that Claimant started to have problems walking around the store and the house, started to have "mini strokes," "her sugar levels are all over the place," and that there are times where Claimant cannot move and do "simple house chores." *Id.*

Joseph Booth, Claimant's fiancé, reported that Claimant's health had declined in the past four years—her blood sugar is "always causing her to be very distant and sick"; her feet swell; she had put on weight because of her back pain; her vision is bad and she has a hard time seeing cars, signs, people, and labels; she needs help with "daily things" such as putting on shoes and socks and dressing; and after she "trys [sic] to do things," "it seems the next 2–3 days after she hurts []." (R. 375). Booth stated that he sees Claimant daily, and, in his opinion, Claimant does not need to work because "it seems to cause more damage" than it does good. *Id.*

8

Vicki Mcdonunough, Claimant's former neighbor, reported likewise that Claimant used to be a hard worker but Claimant's health went downhill due to her diabetes, her eyes "giving her problems," back pain, and mood swings, and that Claimant can no longer do the things she used to enjoy. (R. 376)

Melina Wichmann, a friend and assistant manager of the local Dollar General store, similarly reported that Claimant's health has visibly declined and rapidly deteriorated since they met in in 2016, especially regarding Claimant's blood sugar. (R. 377).

Claimant does not point to a particular error in the ALJ's treatment of Claimant's statements or the third-party reports, only that the ALJ's RFC is inconsistent with these statements. Defendant contends that the ALJ properly and reasonably considered Claimant's severe impairments and the objective medical evidence and opinions, and the ALJ's decision is supported by substantial evidence. Def.'s Mem. [DE-24] at 6–9.

Here, the ALJ discussed Claimant's impairments, and substantial evidence supports the ALJ's RFC determination. The ALJ noted Claimant's February 2017 trigger finger release and an April 2017 left wrist arthroscopy, (R. 487), a May 2018 EMG/nerve conduction study consistent with bilateral carpal tunnel syndrome, (R. 478), and that Claimant underwent a bilateral endoscopic carpal tunnel release and extensor tenosynovitis of the second/third dorsal compartment, (R. 488). (R. 18). The ALJ discussed that while Claimant reported intermittent numbness and tingling in a July 2018 follow up, Claimant also reported significant improvement and denied pain, (R. 488). The ALJ also noted that Claimant reported that she was unable to fully extend her right middle finger in August 2019, (R. 1125), that Claimant underwent a right middle finger release in September 2019, and that she elected to have a left middle trigger finger release in March 2020 after the success of the September release, (R. 1203). (R. 18).

9

The ALJ then noted Claimant's receiving pain management for low back pain/SI joint dysfunction since 2017, which included prescribed medications and injections, (R. 379–430, 595–639, 959–91, 1314–74). (R. 18). The ALJ cited September 2019 treatment notes, (R. 967), that indicated successful SI joint injections with 50% pain relief for several months. (R. 18). The ALJ continued, stating that Claimant was continued on pain management with prescribed medications and injections through 2020, (R. 1314–74), and also stating while Claimant reported tenderness in the SI joint in February 2020, she also reported that her pain was improved and her gate was normal. (R. 18). The ALJ further stated that Claimant testified she uses a cane to ambulate, but the ALJ noted an emergency room report from May 2020 describing that her cane was a golf club with the putter head removed. The ALJ noted Claimant's receiving treatment for lipomas on her neck and back, but stated that the record did not show this condition was not treatable or that it would cause greater limitations than assessed, (R. 1221–1313). (R. 18).

The ALJ discussed Claimant's history of diabetes and hypertension, and that she was prescribed medication, as well as an inhaler/nebulizer for asthma, (R. 836). (R. 18). The ALJ noted treatment notes that indicated Claimant needed to control her diabetes to prevent renal disease, that she needed to comply with the diabetic diet and medications, and that she was continued on anti-hypertensive medications and a low sodium diet to help with swelling, citing (R. 947). (R. 18–19). The ALJ stated that in September 2019, Claimant reported blurred vision in the left eye and that she was diagnosed with diabetic retinopathy, however notes indicated her vision would improve with better diabetic and blood pressure control, (R. 1175). (R. 19). The ALJ further stated that Claimant's blood pressure was elevated in January 2020, but notes informed it may have been related to pain, (R. 1379–80). (R. 19). February 2020 notes, the ALJ continued, indicated severe diabetic changes to both eyes, (R. 1197). (R. 19). The ALJ stated that, in a May

10

2020 physical examination, Claimant had decreased sensation of the bilateral lower extremities but had normal gait, and that Claimant was diagnosed with diabetic neuropathy, (R. 1220). (R. 19). The ALJ then noted that in August 2020, Claimant reported seeing floaters in her eyes and experiencing headaches, and that weight loss, smoking cessation, and strict adherence to diet and medications were recommended, (R. 2715). (R. 19). The ALJ stated that medication was given to address edema and fluid buildup, which was beneficial, (R. 1375–98). (R. 19). He also noted a letter from Claimant's provider about her service dog and ongoing medical conditions, (R. 370). (R. 19). The ALJ then stated that Claimant's vision records document retinopathy and vision fluctuations for which she had undergone laser treatments, (R. 1173–82, 1193–97, 1399–1400, 2711–17, 2718–31), and that Claimant's doctors advised that she would benefit from better control of her diabetes and blood pressure. (R. 19). However, the ALJ stated, "the record fails to support any specific limitations regarding her vision." (R. 19). He also stated that he restricted Claimant's exertion level, added postural limitations, and limited exposure to hazards, "which fully accommodates the effects of claimant's combined impairments," and that the record did not "substantially support[] the need for an assistive device for ambulation and/or balancing when standing considering the generally benign physical findings regarding gait and station, as well as lower extremity strength, despite some decreased sensation noted." (R. 19).

The ALJ then noted Claimant's history of depression and anxiety, as indicated in an August 2019 psychological exam by Dr. Craig Farmer, (R. 954–58). (R. 19). The ALJ stated that Claimant reported she was not receiving mental health treatment and that she felt her emotional issues had improved over the years—that she was not as depressed as in the past, that she had not experienced recent panic attacks. (R. 19). The ALJ mentioned that Claimant was noted to be anxious during the evaluation, and that Claimant reported her primary care provider prescribed medication for

11

depression but not anxiety. (R. 19). On mental status examination, the ALJ stated, despite Claimant's being paranoid, her thought processes were clear, her conversation was goal-directed, her short-term or remote memory was normal, and she was fully oriented. (R. 19). Finally, the ALJ stated that the record did not show subsequent treatment with a mental health specialist. (R. 19).

Dr. Farmer opined that Claimant was capable of understanding, retaining, and following instructions; sustaining attention to perform simple repetitive tasks; and tolerating the stress and pressure associated with day-to-day work. The ALJ noted that Dr. Farmer further found that Claimant's ability to relate to others including fellow workers and supervisors might be somewhat limited, (R. 954–58). (R. 20). However, the ALJ found this partially persuasive, as it was based on a one-time evaluation, the record showed Claimant only receiving mental health treatment from her primary care provider, and the record otherwise did not offer strong support for social interaction limitations. (R. 20).

The ALJ discussed the opinions of State agency medical consultants, Todd Rowland and E. Woods, who opined that Claimant had the physical RFC to perform less than the full range of light work, (R. 110–30, 131–51). (R. 20). The ALJ found these opinions to be partially persuasive but found that the record supported "greater physical limitations since the claimant has continued to experience issues with her diabetes, and she has had surgeries on her upper extremities," (R. 484–579, 1115–31, 1214–20, 1314–74), and thus the reduction to sedentary work is more consistent with the expanded record. (R. 20).

The ALJ considered the opinions of State agency psychology consultants, Brett A. Fox, (R. 68–87, 88–107), and David Mullen, (R. 110–30, 131–51), who opined that Claimant had the mental RFC to perform simple, routine, repetitive tasks in a low stress environment with limited

12

interpersonal interaction. (R. 20). The ALJ, however, did not agree with the moderate limitations in social functioning because the record was sparse for mental health treatment. The ALJ also mentioned Dr. Farmer's indication that Claimant's ability to related to others may be somewhat limited due to Claimant's description of being argumentative with others and paranoid at work, which indicated conflicts in the past. But the ALJ concluded that the expanded record did not provide strong support for more social interaction limitations. (R. 20).

Finally, the ALJ considered the letter of Claimant's physician, Dr. Edward Haga, which requested a service dog for Claimant, (R. 370), and the registration of Claimant's service dog, (R. 371, 372, 373). (R. 20). However, the ALJ did not find these exhibits to constitute an "opinion" because they did not "represent a statement/opinion on the claimant's functional abilities, even if her provider felt a service dog would be beneficial because of her 'medical conditions.'" (R. 20).

The ALJ considered evidence and notes in the record regarding Claimant's impairments, including Claimant's low back/SI joint dysfunction, major depressive disorder, and generalized anxiety disorder, and the court can follow the ALJ's reasoning in support of the sedentary RFC with limitations. Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. The ALJ further sufficiently discussed Claimant's statements and the third-party reports, and explained that he found substantive evidence in the record more probative of the RFC.

Claimant has pointed to no specific treatment record, or evidence therein, that the ALJ failed to consider or improperly considered, effectively asking the court to reweigh the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence,

13

[the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted); *see also Harris v. Colvin*, No. 1:14CV1005, 2016 WL 698083, at *9 (M.D.N.C. Feb. 19, 2016) ("Plaintiff cannot prevail in this Court by opaquely pointing to the record as a whole; to the contrary, he bears the burden of establishing [his] impairments and the resulting limitations on [his] ability to perform work") (internal citations and quotations omitted); *Sutton-Gallop v. Berryhill*, No. 2:16-CV-11-FL, 2017 WL 3495643, at *5 (E.D.N.C. July 28, 2017), *report and recommendation adopted*, 2017 WL 3495718 (E.D.N.C. Aug. 14, 2017) ("[C]onclusory arguments without citation to the record are insufficient to meet [the claimant's] burden[.]") (citing *Harris*, 2016 WL 698083, at *9). Accordingly, the ALJ did not err in evaluating Claimant's RFC, Claimant's subjective statements regarding her limitations, or the third-party reports.

## B.  The VE Testimony

Claimant contends that the ALJ relied upon facially untenable VE testimony—that employers would tolerate two days per month of employee absences at entry level, unskilled jobs. Pl.'s Mem. [DE-20] at 6. This testimony, Claimant argues, "is simply not credible." *Id.* Defendant argues that the ALJ reasonably relied on the VE testimony, that jobs remained available for Claimant even with two absences per month, and that the ALJ's step five finding is supported by the record. Def.'s Mem. [DE-24] at 9–12.

As explained above, the RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-

14

8p, 1996 WL 374184, at *5. It is the ALJ's role to consider a claimant's impairments and limitations, including any side effects caused by medications, and to formulate an appropriate RFC.

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record as found by the ALJ. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record).

During the administrative hearing, the ALJ posed various hypotheticals to the VE. (R. 58–60). The ALJ presented a hypothetical individual who was limited to sedentary work; to frequent use of the upper extremities for reaching in all directions, pushing, pulling, operating hand controls, handling, fingering, feeling; occasional use of the lower extremities for pushing, pulling, operating foot controls; occasional climbing ramps and stairs; no climbing ladders, ropers, scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling. (R. 59). The hypothetical individual described by the ALJ would further need to avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gasses, poor ventilation, and would likewise need to avoid all exposure to workplace hazards such as dangerous, moving machinery and unprotected heights. (R. 59). The ALJ continued, asking the VE to assume that the individual was generally able to understand and perform simple, routine, repetitive tasks and was able to maintain concentration, persistence and pay to stay on task for periods of two hours at a time over the course of a typical eight-hour workday with normal breaks, and in a work setting that is low stress, not production-

15

paced or quota-based, and with a goal-ranged job. (R. 59).

The VE identified the following sedentary occupations, order clerk (DOT# 209.567-014), call out operator (DOT# 237.367-014), and document preparer (DOT# 249.587-018) that the hypothetical individual could perform. (R. 60). The VE testified that the information was consistent with the Dictionary of Occupational Titles ("DOT") and companion publications, with the exception of employment numbers, which came from the "U.S. Publishing and Employment Quarterly." *Id.*

The ALJ added to the hypothetical that the individual needed to use an assistive device such as a cane for ambulation, to which the VE responded that use of an assistive device would not affect the identified jobs at the sedentary level. (R. 60–61). The VE responded the same when the ALJ added that the hypothetical individual would need the assistive device not only for ambulation but also for balance. (R. 60–61).

Regarding absenteeism, the ALJ asked the VE, "Going into some things that affect work broadly, what about missing work or absenteeism in the unskilled work setting we're dealing with, the person might miss work and that's a recurring problem. Is there any tolerance for that?" (R. 61) The VE answered, "Yes, that's based upon—they base their absenteeism sir, two or more days per month is the limit they can maintain work." *Id.* The ALJ then questioned the VE regarding "off task" time during the workday, etc. (R. 61–64).

Claimant's attorney questioned the VE regarding absenteeism, asking "[a]nd then also, if I understand your testimony as to absenteeism, because in other proceedings typical VE testimony has trended toward allowing one day per month on a continuing basis as a maximum allowable absenteeism rate. But it's your testimony that two days per month would be allowable on a repeating, continuing basis, and still would allow for ongoing employment. Is that correct?" (R.

16

65). The VE answered, "[t]hat's correct, and I'll make a note, sir, that as we indicated before in past testimony, the standard in regards to publications that are being used, the absenteeism is actually three days per month, and so I'm saying two days per month. And as you indicated, the big indicator is on a consistent basis and if you tell me this is the basis, you know, that's going to [INAUDIBLE]." *Id.*

Here, Claimant generally argues that the VE's testimony regarding absenteeism "is simply not credible." Pl.'s Mem. [DE-20] at 6. Claimant provides no authority for this proposition. For example, she fails to identify any conflict with the DOT that the ALJ failed to resolve, *see Pearson v. Colvin*, 810 F.3d 204, 207–08 (4th Cir. 2015), nor does she appear to contend that the VE was internally inconsistent, *see Wesley v. Kijakazi*, No. 1:20-CV-364, 2021 WL 4129234, at *6 (M.D.N.C. Sept. 9, 2021) ("Furthermore, independent research reveals that cases where courts have remanded due to an ALJ's alleged failure to identify and resolve internal inconsistencies in a VE's testimony involve actual conflicts that remained largely irreconcilable absent further explanation.") (citing *Kimbra L. v. Acting Comm'r of Soc. Sec.*, No. 3:20CV6192, 2021 WL 3088713, at *4 (W.D. Wash. July 22, 2021) (finding reversible error where the ALJ relied upon inconsistent VE testimony—the VE responded that an employer can typically tolerate one [absence] per month or one [absence] every other month without termination, but the VE also unequivocally testified that an individual with absenteeism of one time per month could maintain competitive employment in the three identified jobs)). Further, while the ALJ did not discuss absenteeism in his decision, he did not need to do so since he did not include that restriction in the RFC. *See Cumbee v. Kijakazi*, No. CV 5:20-3826-KDW, 2022 WL 1591055, at *10 (D.S.C. May 19, 2022) ("While the ALJ could use the VE to assist in determining whether there is available work that Plaintiff can perform, the ALJ was not obligated to accept or rely on all of the VE's responses.")

17

(citing *Craigie v. Bowen*, 835 F.2d 56, 57–58 (3d Cir. 1987); *Baker v. Colvin,* No. 3:13-CV-20376, 2015 WL 5687544, at *9 (S.D.W. Va. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 5698511 (S.D.W. Va. Sept. 28, 2015) ("The RFC, and by extension, any hypothetical question relied upon, need only reflect those limitations that are credibly established by the record.") (citing *Russell v. Barnhart*, 58 Fed. Appx. 25, 30 (4th Cir. Feb. 7, 2003))).

Claimant points to no authority for her conclusory proposition that the VE's absenteeism testimony is facially untenable and the ALJ ultimately did not include a limitation that Claimant would miss two days of work per month in the RFC. The hypothetical to the VE included the limitations the ALJ found supported by the record that were ultimately imposed in the RFC. (R. 59–64); *see King v. Berryhill*, No. 2:17-CV-58-D, 2018 WL 6817036, at *8 (E.D.N.C. Dec. 6, 2018), *adopted by* 2018 WL 6815651 (E.D.N.C. Dec. 27, 2018). Accordingly, the ALJ appropriately relied on the VE's testimony.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-19] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, the 9th day of September, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge